# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:06CR00062 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **DAMIAN ANTONIO MURPHY**, ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Damian Antonio Murphy, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010). Upon review of the record, I find that the motion is without merit and will deny relief.

I

The defendant, Damian Antonio Murphy, and two codefendants were indicted in this court with conspiring to possess with intent to distribute controlled substances in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999 & Supp. 2010) (Count One), and with possessing counterfeit currency, in violation of 18 U.S.C.A. § 472 (West Supp. 2010) (Count Two). The charges arose from a traffic stop as a result of

which police seized incriminating items, including drugs, counterfeit U.S. currency, and $14,790 in real U.S. currency.

Murphy was initially represented by appointed counsel, but elected to go to trial representing himself, although the court assigned stand-by counsel to assist him if requested. At trial, his codefendants, who had pleaded guilty, testified against him and he declined to testify. He was convicted by a jury and thereafter requested and obtained appointment of counsel for sentencing. Murphy was sentenced at the low end of the applicable advisory guideline range to 262 months of imprisonment.

Murphy appealed, and the court of appeals assigned new counsel to represent him. His convictions were affirmed. *United States v. Murphy*, 552 F.3d 405 (4th Cir.), *cert. denied*, 129 S. Ct. 2016 (2009). He then filed the present pro se motion under § 2255. In response, the government has filed a Motion to Dismiss, which is ripe for decision.

II

Murphy's § 2255 claims are somewhat scattered and repetitive — some alleging errors that occurred during trial and some complaining about counsel's representation at various stages of the case. Many of the numbered claims allege multiple constitutional violations, and he raises additional issues in his response to

the government's motion. Because Murphy is proceeding pro se, his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This requirement for liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that even remotely suggests a factual basis for the claim." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958). Where the § 2255 motion, when viewed against the record, does not state a claim for relief, the court should summarily dismiss it. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970).

A. Procedural Default.

A § 2255 motion cannot substitute for appeal. Where a defendant in §2255 proceedings attempts to raise new claims that could have been raised on appeal or arguments in support of a previously raised claim, district court review of such issues is barred absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A § 2255 motion also cannot recast claims already addressed on appeal. Once an issue has been fully considered and decided by the court of appeals, the defendant cannot relitigate the issue before this court

under § 2255. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

To the extent that Murphy intends to raise claims that this court erred or that the prosecutor committed misconduct of any sort, these claims could have been raised on direct appeal.[1] Accordingly, such claims are procedurally defaulted under *Bousley*, and I may not consider such claims on the merits unless Murphy demonstrates cause for the default and resulting actual prejudice.[2] 523 U.S. at 622.

---

[1] Specifically, Murphy claims that his arrest was illegal because the inventory search was improper (Claim 3); that the warrantless search of the contents of his cell phone three months after his arrest was illegal (Claim 5); that the prosecutor did not ensure that Murphy, as an incarcerated pro se defendant, received a copy of the Information seeking to enhance his sentence based on prior convictions (Claim 6); that he was unlawfully sentenced for an amount of drugs not charged in the Indictment and the jury was not instructed to find any specific drug amount beyond a reasonable doubt (Claim 8); that his due process rights were violated because he did not see a copy of the Indictment, which was procured with perjured testimony (Claim 11); and that his arrest was illegal because he was not allowed to leave the scene (Claim 12). He also asserts that he was detained for hours without receiving *Miranda* warnings; that the prosecutor constructively amended the Indictment; that he had insufficient access to discovery materials in preparing for trial pro se; and that his transfer to Alabama after trial interfered with his ability to prosecute his appeal and certiorari petition.

Many of these issues were addressed by this court in determining Murphy's posttrial motions. *United States v. Murphy*, No. 1:06CR00062, 2007 WL 1289917 (W.D. Va. April 30, 2007).

[2] Contrary to the government's arguments in its Motion to Dismiss, Murphy's failure to raise his ineffective assistance of counsel on direct appeal does not render these claims procedurally defaulted. It is well established that a defendant may bring an ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) (finding that claims of ineffective assistance of

Murphy argues that he has shown cause for defaulting his claims of court error and prosecutorial misconduct, because his appellate counsel should have raised the claims on direct appeal. Errors by counsel may serve as cause to excuse the procedural default of a specific constitutional claim, but only if the defendant demonstrates that the errors themselves violated his constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

For the reasons stated below, Murphy fails to state any claims that counsel provided ineffective assistance so as to show cause to excuse his procedural default of court error and prosecutorial misconduct claims. He also makes no colorable claim of actual innocence as required to circumvent procedural default. *See Bousley*, 523 U.S. 623 ("To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.") (internal quotation marks and citation omitted).

B. Claims of Ineffective Assistance.

To prove counsel's act or omission violated his constitutional right, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the

---

counsel should be raised in a § 2255 motion, and not on direct appeal, unless the appellate record conclusively shows that counsel was ineffective).

defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome of the proceeding at issue would have been different. *Id.* at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697.

Appellate counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. Thus, a claim of ineffective assistance on appeal requires a showing that (a) counsel's strategic choices in formulating the appeal "fell below an objective standard of reasonableness" and (b) a reasonable likelihood that absent counsel's errors, the

outcome on appeal would have been different. *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

    1.  Fourth Amendment Challenges.

Murphy alleges that his appellate attorney should have raised different arguments on appeal related to the traffic stop, vehicle search, and his arrest. He contends that the officers' inventory search of the vehicle was unlawful because no inventory sheet was completed as required by state police policy (Claim 1); that the officers illegally detained Murphy for many hours, using the K-9 unit as a pretext for probable cause to search the car and then unlawfully entering the car without a warrant, while failing to let Murphy get his bags or to call a taxi for him (Claim 2); that Murphy's arrest itself was illegal because he did not consent to the search of the car and was, nevertheless, held for hours and even handcuffed for a time without a warrant and without probable cause (Claim 3); that evidence from the car should have been suppressed, based on the illegal warrantless search of the car and the illegal detention of Murphy without probable cause and because police took the counterfeit money from the scene to some other location, rather than to the place of the inventory search (Claim 4); that the warrantless search of Murphy's cell phone, three months after his arrest, was unlawful (Claim 5); and Murphy's arrest was illegal because his detention went beyond the scope of the initial traffic stop and no other probable cause

developed (Claim 12). Murphy also asserts that appellate counsel ignored his requests to assert certain issues on appeal.

These allegations fail to state any claim of ineffective assistance. Counsel did not violate Murphy's rights merely by choosing different issues for appeal that those Murphy had requested. Moreover, Murphy fails to demonstrate a reasonable probability that arguing the alternative grounds he now champions would have resulted in a different outcome.

Appellate counsel argued that the so-called inventory search was a pretext to gather evidence without a warrant, based on the fact that it was conducted at two locations. The Fourth Circuit specifically found that under the circumstances of the stop — on a busy highway in the early morning hours — the officers' decision to remove the items from the car and complete an inventory elsewhere was consistent with police policy. *Murphy*, 552 F.3d at 412-13.

In his challenge to the inventory search, Murphy relies on State Trooper Pruett's testimony that he did not make a written list of all items removed from the car. Pruett testified, however, that other officers completed the inventory. Even assuming without finding that officers never completed a list of items removed, I find no reasonable probability that the appellate court would have found this alleged policy violation to be sufficient proof of pretext or bad faith so as to invalidate the

inventory search itself. *See Colorado v. Bertine*, 479 U.S. 367, 374 (1987) ("reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment").

Given the Fourth Circuit's finding that the warrantless inventory search was lawful, I find no reasonable probability that different appellate arguments concerning Murphy's refusal to consent to the search or the drug dog's failure to alert to any part of the vehicle would have resulted in a different outcome on appeal. On the same ground, I also find that appellate counsel had no viable argument for suppression of the counterfeit money, based on the fact that it was taken from the scene to another location, rather than to the station, for inventory purposes.

Murphy's challenges to the reasonableness of his detention at the scene and his arrest are also unavailing. The evidence indicated a total time of around three hours between the initial stop and Murphy's interview at the station, which is not an unreasonable delay, given the fact that none of the car's occupants gave valid identification. Moreover, once Murphy provided false identification information to the officers in the course of the investigation, they had probable cause to detain him for obstruction of justice under Virginia law. Thus, Murphy fails to present any factual or legal ground on which appellate counsel could reasonably have argued that evidence should be suppressed because Murphy was unlawfully detained or arrested.

Finally, Murphy's claim of ineffective assistance with regard to the search of his cell phone is also without merit. The Fourth Circuit expressly found that the initial searches of the cell phone contents, at the scene and at the station, were valid. *Murphy*, 552 F.3d at 412. The court further held that "once the cell phone was held for evidence, other officers and investigators were entitled to conduct a further review of its contents" and that the district court did not err in refusing to suppress the contents of the cell phone. *Id.* Murphy now argues that if counsel had asserted the officers' failure to make an inventory list as grounds for invalidating the inventory search, the later in-depth search of the phone contents without a warrant would have been invalid and the contents could have been suppressed. Because the court upheld the inventory search, I am bound by that finding, *Boeckenhaupt*, 537 F.2d at 1183, and cannot find that appellate counsel was ineffective in failing to pursue this challenge instead of the ones he raised.

    2. Sentencing Issues.

Murphy claims that the attorney appointed to represent him during sentencing was constitutionally ineffective in a number of respects, as follows: by failing to visit Murphy in preparation for sentencing; by failing to discuss how his Base Offense Level would be affected by dismissal of the forfeiture count of the indictment; by failing to file objections regarding Murphy's failure to receive a sentencing

enhancement information under 21 U.S.C.A. § 851 (West) and his inadequate time to review discovery materials before trial; the suppression of the video of the traffic stop (Claim 6); and by failing to object to the jury's general verdict and to Murphy's being sentenced for drug amounts not charged or found by the jury beyond a reasonable doubt (Claims 7 and 8).[3] Murphy also alleges that the breakdown in his relationship with sentencing counsel constituted a conflict of interest (Claim 9) and that counsel should have objected to the government's failure to offer sufficient documentation of Murphy's prior convictions.

The record belies the validity of these claims. At the start of trial, when the presiding judge asked him if he was ready, the defendant answered, "Yes, sir." (Tr. 3, Feb. 12, 2007.) He made no mention of inadequate preparation time or lack of access to the Indictment or discovery. In addition, he later indicated that he had viewed the video recording of the traffic stop. (*Id.* at 43.)

Similarly, during the sentencing hearing, Murphy made no complaint about counsel or lack of access to documents. Counsel filed written objections to the Presentence Investigation Report, arguing that Murphy should not be held accountable for certain drugs to which witnesses referred, that no enhancement for

---

[3] Murphy also alleges that appellate counsel was ineffective for failing to raise these issues on appeal (Claim 10).

obstruction of justice should apply, that the Base Offense Level calculated from drug amount should be lower, and that Murphy should not be a Career Offender, because his prior convictions were related. Counsel also argued at sentencing that the government had not properly documented Murphy's prior convictions. The fact that the court overruled counsel's objections at sentencing does not support a finding that counsel's sentencing arguments were not reasonable. Moreover, Murphy fails to allege facts demonstrating any reasonable likelihood that a better relationship or more face-to-face discussions with counsel regarding sentencing issues would have resulted in a different outcome.[4]

Because the forfeiture count of the Indictment was dismissed after the currency found in the vehicle was administratively forfeited, Murphy believes this currency should not have been used against him at trial or sentencing. However, he fails to present any coherent argument that counsel could have raised to exclude this evidence from the trial of the conspiracy count, and he fails to demonstrate how this money

---

[4] Murphy's conflict of interest allegation (Claim 9) has no support in the record. He fails to offer anything more than his speculation in support of his assertion that counsel's anger at Murphy caused him to forego bringing certain arguments while representing this client at sentencing or that counsel's alleged omissions were adverse to Murphy's defense.

affected the length of his Career Offender sentence in any respect. Hence, he has not shown deficient performance or prejudice here under *Strickland*.[5]

If sentencing counsel knew that Murphy did not receive or obtain a copy of the § 851 Information before trial, his failure to raise this objection at sentencing might constitute deficient performance.[6] However, Murphy has not shown resulting prejudice under *Strickland*. Nothing in his pleadings or the record indicates any reasonable probability that with pretrial notice of the government's intent to enhance his sentence based on prior convictions, Murphy would have pleaded guilty instead of going to trial. Similarly, because he fails to present evidence indicating that any of the prior convictions listed on the Information were invalid or were improperly attributed to him, he shows no reasonable probability that earlier notice of these convictions would have enabled him to achieve a different outcome at sentencing.

---

[5] Under the same reasoning, Murphy fails to state a claim that appellate counsel was ineffective in failing to argue that the prosecutor improperly relied at sentencing on the U.S. currency forfeited (Claim 10).

[6] Murphy also complains that the § 851 Information did not inform him of the effect the listed prior convictions could have on his sentence. Section 851(a)(1) requires only a written notification to the defendant or his attorney of "the previous convictions to be relied upon." Thus, the Information itself was not deficient. If Murphy received a copy of the Information and failed to recognize its significance for plea bargaining and sentencing purposes, such legal mistakes were part of the risk he chose to assume when he opted to proceed pro se at trial.

Finally, Murphy fails to demonstrate any ineffective assistance with regard to drug type and amount. As stated, counsel did object to the drug amount credited to Murphy. The fact that Count One charged a conspiracy involving three drugs offered no ground for a challenge to the validity of the Indictment itself. *See, e.g., United States v. Marshall*, 332 f.3d 254, 262-63 (4th Cir. 2003) (finding that allegation in single count of conspiracy to commit several drug crimes is not duplicitous, because conspiracy is the crime charged). The court's failure to instruct the jury to make a specific finding on drug type and amount also gave no legal ground for objection to Murphy's sentence. Because 21 U.S.C.A. § 841(b)(1)(C) (West ) does not include any specific type or amount of Schedule II controlled substance as an element of the offense, the Indictment did not need to list drug amount and the court was not required to instruct the jury in this regard.

Most important, Murphy's prior convictions, not drug type or amount, dictated the calculation of his maximum sentence under § 841(b)(1)(C) and the calculation of his sentencing range under § 4B1.1 of the advisory guidelines. Neither sentencing counsel nor appellate counsel can be found ineffective for failing to argue meritless issues, and Murphy can show no reasonable probability that such arguments would have resulted in a different outcome at sentencing or on appeal.

C. Other Allegations of Ineffective Assistance.

Murphy complains that his initial trial attorney and appellate counsel were ineffective in failing to raise a due process objection because the prosecution constructively amended the Indictment to include additional drug types and Murphy was never given a copy of the Indictment under which he was tried (Claims 10 and 11). He asserts that prosecutors pressured his codefendants to lie to the grand jury, that they altered the Indictment without notifying him, and that he was "ambushed" at trial when the evidence involved three types of drugs.[7]

The record offers no factual support for an objection that the Indictment was improperly obtained or that Murphy did not receive proper notice of its contents. The mere fact that the codefendants began cooperating with authorities several weeks after the arrests, after conferring with counsel and considering plea agreement offers, does not prove that their testimony was perjurious. Although the criminal complaints issued early in the case charged only conspiracy to possess with intent to distribute

---

[7] Murphy alleges that the Indictment only charged the codefendants with conspiracy to distribute cocaine; that after the prosecutor discovered in December 2006 that Sheppard had been lying, the government convened a second grand jury, presented Sheppard's new testimony and other unspecified evidence, expanded the conspiracy charge to include two additional drugs, and added a separate charge related to the counterfeit bills; and that the trial then proceeded on all the charges, even though the government had never obtained a superseding indictment.

cocaine, the Indictment which issued October 3, 2006 — the only indictment returned in the case — charged in Count One that Murphy and the two codefendants conspired to traffic in cocaine, cocaine base, and hydromorphone and charged in Count Two that they possessed counterfeit currency.

Similarly, the fact that codefendant Sheppard gave conflicting statements about his cell phone messages to Murphy does not prove that his testimony before the grand jury or at trial was false. Sheppard explained to the jury that when the investigator first called him to ask about his text messages to Murphy, Sheppard lied and said he sent the messages to a made up person named Dog, because at the time he received the agent's call, Sheppard was with another drug user and did not want this individual to know that he was giving information to the DEA about Murphy. Later, Sheppard told authorities, and testified at trial, that the text messages were actually asking to buy Dilaudid pills from Murphy.

The record also belies Murphy's claim that he did not know before trial that Count One involved three drugs. The clerk's minutes of Murphy's arraignment on October 25, 2006, indicate that Murphy and counsel waived the reading of the Indictment in open court, but such a waiver offers no indication whatsoever that Murphy was not fully informed of the charges in the Indictment before entering a not guilty plea at arraignment. In November 2006, counsel filed a Motion to Suppress,

in which she cited the three drugs charged in Count One and sought to exclude evidence procured as a result of the traffic stop, including the crack and cocaine powder found in the car and the cell phone. While this motion did not specifically move for suppression of evidence that Murphy sold hydromorphone, suppression of the cell phone as evidence would also have resulted in suppression of Sheppard's text messages regarding his purchases of this drug from Murphy.

Finally, Murphy alleges that his rights were violated when he was transferred to a jail in Alabama after trial for the purpose of interfering with his ability to prosecute his appeal and certiorari petition. Although Murphy appears to be offering this bald assertion in support of a claim that appellate counsel was ineffective,[8] he offers no evidence whatsoever that anyone connected with the criminal proceedings in Virginia had any involvement in this transfer.[9] Moreover, as I have already decided, Murphy fails to demonstrate that appellate counsel was constitutionally ineffective in failing to argue on appeal and in the certiorari petition the arguments that Murphy believes he should have raised. Therefore, Murphy fails to state any

---

[8] Murphy also alleges that appellate counsel misled him by advising him that certiorari was his last legal remedy, without mentioning the possibility of pursuing a § 2255 motion. However, because there is no constitutional right to the assistance of counsel in habeas proceedings, this claim states no ground for relief under § 2255. *See Rouse v. Lee*, 339 F.3d 238, 250 (4th Cir. 2003).

[9] The PSR indicates that at the time of the federal sentencing hearing, there was an outstanding warrant charging Murphy with various offenses in Jefferson County, Alabama.

ineffective assistance claim related to his incarceration in Alabama during appellate proceedings.

III

For the stated reasons, I will grant the Motion to Dismiss and deny the defendant's § 2255 motion.

A separate Final Order will be entered herewith.

ENTER: January 20, 2011

/s/ JAMES P. JONES
United States District Judge